AYRES, Judge.
This is an action in tort arising out of a collision of June 22, 1966, on Jordan Street in Shreveport between a Ford automobile and a Chevrolet taxi. Plaintiff seeks, on behalf of his minor daughter, LaVerne E. Register, damages for personal injuries sustained by her and, on his own behalf, reimbursement of medical expenses incurred and to be incurred in the treatment of his daughter’s injuries.
Made defendants are Mrs. Thelma Duncan Hill, owner and operator of the Ford in which plaintiff’s daughter was a guest passenger, and Mrs. Hill’s insurer. Upon application of these defendants, Yellow Cab Company of Shreveport, Inc., and Henry Johns, driver of the taxi, were made third-party defendants, against whom the defendants, in the alternative, sought contribution as joint tortfeasors. After denying any negligence on the part of Johns and relying upon negligence charged to Mrs. Hill, third-party defendants sought, in reconvention, damages for personal injuries sustained by Johns and property damage inflicted upon the taxi.
On a finding that Mrs. Hills’ negligence was the sole cause of the accident, there was judgment in the trial court against the defendants in plaintiff’s favor on behalf of his minor daughter for the sum of $2,500.00 and, on his own behalf, for $282.00, and in favor of the third-party defendants — Yellow Cab, for $376.86, and Henry Johns for $250.00. From the judg-gent accordingly rendered and signed, defendants prosecute a suspensive appeal.
The issues presented for resolution relate primarily to the manner of the occurrence of the accident and are therefore obviously factual in character.
Jordan Street, where the accident occurred, is of sufficient width to provide, on both sides, a lane for parallel parking and a lane for traffic in each direction, separated by a painted line in the center of the street. Mrs. Hill, in her Ford Falcon, accompanied by LaVerne Register in the center on. the back seat with two other girls and Patty Burns in the center on the front seat with another girl on the right, was proceeding at a slow rate of speed easterly in the curb, or parking, lane of Jordan Street. This car was followed by that of Mrs. Shirley Leona Crace, who, also, was accompanied by several girls. They were en route to a church located on their right, or the south, side of the street. Having inadvertently passed their destination, Mrs. Hill intended a right turn into an intersecting street to park at the rear of a school. However, on reaching the intersection, she observed that the street was a one-way thoroughfare for traffic in the opposite direction. The intersecting street formed a T-intersection with Jordan Street. She thereupon turned to the left and entered the eastbound traffic lane with the intention of executing a maneuver to reverse her course and return to the church. Though veering to the left toward a private drive across the street which Mrs. Hill intended to enter and then back out to reverse her course, the car had its blinkers on indicating a right turn. This maneuver was undertaken without observation of traffic conditions to the rear. On veering to the left into the eastbound traffic lane, Mrs. Hill’s car was struck by the taxi, also proceeding easterly but in the normal eastbound traffic lane.
The burden is upon a motorist attempting a left turn to ascertain that it can be made in safety. LSA-R.S. 32:104; Fulgium v. Lamb, 179 So.2d 676 (La.App., 2d Cir.1965).
This rule, provided by statute, applies where a motorist attempts a change of course such as when leaving the curb or parking lane of a street, or when a left turn is attempted into a private drive. A motorist attempting such maneuvers must *627 exercise a high degree of care before attempting to c|o so and should not make such an attempt where there is danger to normal overtaking or oncoming traffic. Tyler v. Marquette Casualty Company, 79 So.2d 376 (La.App., 2d Cir.1955).
Johns was proceeding at a moderate rate of speed in his proper lane of travel when Mrs. Hill’s car suddenly veered into his traffic lane. The conclusion is inescapable that Johns was free of negligence and that Mrs. Hill’s negligence constituted the sole cause of the accident.
No contention is raised with reference to the award made for medical expenses incurred for the treatment of the minor’s injuries nor for the property damage sustained to the taxi. Defendants complain, however, that the awards for the injuries sustained by plaintiff’s minor daughter and by Henry Johns are excessive.
LaVerne Register, at the time of the impact, was seated, as aforesaid, as the middle member of three occupants on the rear seat of the automobile. By force of the impact, her feet slid under the front seat, her knees struck the back of the seat, and her neck was jerked back and forth. Neither soreness nor pain immediately manifested itself. By.the following morning her neck had become stiff, her muscles taut, and her legs and arms sore and painful; her knees were swollen. An appointment was made for the following day with Dr. Robert D. Hightower, an orthopedist, to whom it was reported that the child was thrown forward, struck the back seat of a car with her knees, and that she twisted her neck. She was reported to have been slightly stunned but not unconscious following the accident. An examination disclosed tenderness to pressure and moderate spasm of the muscles in both right and left sides of her neck, tenderness and spasm of the upper shoulder muscles, right and left, as well as tenderness and spasm of the back of the neck musculature. Weakness in the upper extremities and slight swelling and tenderness about the knees were also noted. Range of motion in the neck, shoulder, elbow, wrist, and knees, right and left, was normal. In the doctor’s opinion, the minor had experienced a muscular and ligamentous strain of her neck and bruising of both knees. Muscle relaxants were prescribed to alleviate muscle spasm and moist heat was prescribed.
A week later, July 1, 1966, another examination was conducted by the doctor which disclosed that there remained tenderness about the lateral aspect of the elbow and some moderate vertebral muscle spasm in the left side of the patient’s neck. As a therapeutic measure, the doctor advised exercise in addition to heat treatment. An examination of July 15, 1966, disclosed a continuation of tenderness about the left side of the child’s neck, with moderate muscle spasm in that area and tenderness in the left posterior area of the neck. Normal range of motion, however, was noted in the neck.
A referral of the patient to a physiotherapist was made. The child’s neck was placed in traction; deep heat, such as diathermia, and ultra sound were administered in an attempt to relieve the muscle spasm and soreness. Another visit was made to the doctor July 20, 1966, at which time the child was said to have improved and to be approaching normalcy in all respects. Physical therapy was discontinued. A follow-up examination in three weeks was advised. However, the child continued with physical therapy until August 8, 1966. Continued complaints of pain in both sides of the neck and shoulder were made through August 19, 1966. Although discomfort persisted on occasions, the opinion was expressed that “nothing permanent would result.” From an examination of May 23, 1967, Miss Register, according to Dr. Hightower, had recovered and had become physically normal, but, for persistent soreness in the right side of her neck and for discomfort experienced in her elbows, warm moist heat was recommended for symptomatic relief.
*628 The rule is that in the absence of abuse of discretion an award made in compensation of injuries sustained should not be disturbed. From our appreciation of the facts to which we have briefly-referred, and from a consideration of the awards made in similar cases, we are unable to conclude there was an abuse of the discretion vested in the trial court in fixing this award.
Henry Johns sustained an injury to his left arm. He did not seek medical attention, but, in describing the injury, as well as the pain and discomfort experienced therefrom, he stated, “It just ‘swole’ up and got blue and hurt; hurt me for about three weeks there that I had to keep putting some deep heat and heat pad on it every night because it hurt all the time there and I couldn’t hardly sleep some nights with it for about three weeks. Wasn’t nothing broke in it, just bruised and a little ‘swole’ up on me.” No abuse of the discretion vested in the trail court was manifested in the award made for Johns.
The judgment appealed is accordingly affirmed at defendants-appellants’ costs.
Affirmed.