AYRES, Judge.
This action for damages arose out of a motor vehicle collision at a “T” intersection of a secondary asphalt-surfaced road with U. S. Highway 167, a primary concrete-paved highway. The former, from its intersection with the latter, after first pursuing an easterly course, proceeds in a southerly direction and forms a bypass route around Winnfield, Louisiana. A no-passing zone, clearly marked, extends from the top of a hill north of and to the intersection, a distance of approximately 150 yards. The existence of the intersection is also clearly marked with appropriate signs.
Involved were an Oldsmobile automobile owned and operated at the time by David Dorty and a Ford owned and driven by Gerald E. Taylor. Plaintiffs were Dorty and three guest passengers. Defendant is the insurer of the Taylor automobile. Both vehicles, with the additional car of Troy Lee Hatten, “sandwiched” between, were proceeding in a southerly direction on U. S. Highway 167 with the Taylor Ford in the lead. The accident occurred as Dorty attempted a passing movement of both the Taylor and Hatten automobiles at a time when Taylor was executing a left-turn into the bypass road.
The trial court concluded Dorty’s negligence in attempting a passing movement at an excessive rate of speed and at an intersection in disregard of a no-passing zone and intersectional warning signs was the proximate cause of the accident. Taylor was thus exonerated of negligence. Plaintiffs’ demands were accordingly rejected and they appealed. After the appeal was lodged in this court, plaintiff David Dorty died. By appropriate proceedings, his succession representative was substituted as a party plaintiff.
The facts established by the record are that Taylor, at or near the top of the incline north of the intersection, turned on his blinkers giving notice to following traffic of his intention to make a left turn into the intersecting road. He accordingly reduced his speed as he approached the intersection to about 20 m. p. h. Hatten likewise reduced his speed to a similar rate. Taylor, as he neared the intersection, made an observation of traffic conditions in both directions, particularly to his rear, and, after seeing only the car immediately behind, the speed of which had been reduced to conform to that of his own car, began his left-turn movement. On reaching the center of the left traffic lane of the highway, his vehicle was struck from the rear by the Dorty vehicle as Dorty was attempting *839 a passing maneuver. The left rear of the Taylor vehicle was struck by the front of the Dorty car. Dorty saw the Taylor vehicle only momentarily before the collision. Taylor never saw the Dorty vehicle until after the accident.
The general statutory rule firmly imbedded in the jurisprudence is that a left-turn movement is generally characterized as a dangerous operation, not to be undertaken until the motorist ascertains that it can be made in safety. LSA-R.S. 32:104. This principle is so well established in our jurisprudence as to admit neither question nor argument. Citation of authorities would be superfluous.
However, there is no assumption that the driver of a vehicle who undertakes a left turn is per se or ipso facto guilty of negligence. Breland v. American Insurance Company, 163 So.2d 583 (La.App., 2d Cir. 1964—writ refused); Faulkner v. Ryder Tank Lines, Inc., 135 So.2d 494 (La.App., 2d Cir. 1961—cert. denied); Paggett v. Travelers Indemnity Company, 99 So.2d 173, 176 (La.App., 2d Cir. 1957).
In judging whether a left turn can be made in safety, the motorist has the right' to assume that a following motorist will observe all the duties imposed upon him by law and common sense. Thus, he may assume that the following motorist will proceed within the speed limit, will not pass at an intersection, and will not cross over a yellow line in his traffic lane marking a no-passing zone, and, moreover, will keep a proper lookout. Breland v. American Insurance Company, supra; Faulkner v. Ryder Tank Lines, Inc., supra; Green v. Plummer, 119 So.2d 862 (La.App., 1st Cir. 1960); Newman v. Southern Farm Bureau Casualty Ins. Co., 110 So.2d 816 (La.App., 1st Cir. 1959); Kelly v. Neff, 14 So.2d 657 (La.App., 2d Cir. 1943); White v. Neff, 11 So.2d 289 (La.App., 2d Cir. 1942).
A motorist proceeding in compliance with law has a right to assume that other motorists will likewise observe the law and that he can indulge in this assumption until he sees, or should see, that such a motorist has not observed, or does not intend to observe, the law. Henderson v. Central Mutual Insurance Company, 238 La. 250, 115 So.2d 339 (1959); Koob v. Cooperative Cab Co., 213 La. 903, 35 So.2d 849 (1948); Faulkner v. Ryder Tank Lines, Inc., supra.
In executing a left turn, Taylor took every reasonable precaution, made close observation of approaching traffic, noted the lack of oncoming traffic, checked the location and speed of the only car seen following him, gave proper and timely left-turn signals, and ascertained that his signals were heeded by the driver of the only car in view to his rear. It was only then that defendant driver began to carefully negotiate the turn to the left into the intersecting road.
It is urged, however, that Taylor’s failure to see the Dorty vehicle constituted negligence. An obvious answer, established by the evidence, is that the Dorty vehicle was not susceptible of observation until Taylor was well into and crossing the southbound traffic lane. A clear picture of Dorty’s maneuver is shown by the facts established in the record. Dorty, driving at a high rate of speed, suddenly pulled out from behind the Hatten vehicle in a passing movement at a time when Taylor was well engaged in his left-turn movement. In the brief moment during which Taylor directed his attention toward the intersecting road, the Dorty vehicle pulled out of its proper traffic lane at an excessive rate of speed and attempted a passing movement at the intersection and in a no-passing zone. Dorty’s conduct was reckless and grossly negligent; proper observation or lookout on his part was totally absent.
The statutory rule is that no vehicle shall be driven to the left side of a highway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible for *840 a sufficient distance ahead to permit a passing movement to be completely and safely made. LSA-R.S. 32:75. Moreover, no vehicle shall, at any time, be driven to the left side of a highway when approaching within 100 feet of or traversing any intersection. In referring to similar provisions contained in a prior statute, it was observed in Sumrall v. Myles, 51 So.2d 411, 414 (La.App., 1st Cir. 1951):
“ * * * it is provided that the driver of a vehicle shall not drive to the left side of the center line of the highway in overtaking and passing another vehicle traveling in the same direction unless such left side is clearly visible and free from oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in perfect safety, and whenever an accident occurs under such circumstances, the responsibility therefor, rests prima facie upon the driver of the vehicle doing the overtaking or passing, * * *. There can be no question but what the defendant in this case, as reflected by the evidence herein, sought to overtake and pass a vehicle traveling in the same direction when he could not ascertain that the highway ahead was free from traffic in order to permit such overtaking and passing to be made in safety.
“It may be added to the trial judge’s finding that in the case involved, the defendant was not attempting to overtake only one car but two cars at a time when he was only 30 or 40 feet behind the second car from the intersecting gravel road and when he was driving at a speed of some 55 miles, according to his own testimony.
“It is our opinion that the defendant was bound to await the passing of the crest of a hill before attempting the overtaking of the slow driving automobiles ahead of him and that the sole proximate cause of the accident was his obvious conclusion that the two cars ahead of him would continue straight ahead and that there would be no oncoming traffic from the east. In so far as the actions of the driver of the Ford automobile [the forward vehicle] are concerned, we agree with the trial judge that the preponderance of the evidence shows no negligence on his part. He negotiated the left turn to the gravel road as any prudent person would.”
Under the facts established in this case and as found by the trial court, with which we are in accord, we find no basis for disagreement with the conclusion reached that defendant’s driver was free from negligence and that the negligence of David Dorty constituted the sole, proximate cause of the accident.
After this cause was submitted to this court for decision, but before judgment was rendered, it came to the attention of the court that David Dorty, one of plaintiffs, had died. Thereafter, no appearance was made by either his heirs or legal representative. Thereupon, in accordance with Rule XIII (3) of the Uniform Rules of the Courts of Appeal, notice was given by publication:
“That unless the legal representative of the deceased David Dorty appears and becomes a party-appellant to this appeal within three (3) months from the date of the first publication of this order of summons, the appeal will be dismissed or the case will be heard and disposed of as in other cases. By order of the Second Circuit Court of Appeal.”
The prescribed delay having expired and no legal representative of deceased or of his estate having appeared and become a party-appellant in this cause, this appeal as to David Dorty should be dismissed.
For the reasons assigned, the judgment appealed, so far as concerns plaintiffs other than David Dorty, is affirmed at plaintiffs-appellants’ costs, and, as to plaintiff David Dorty, the appeal is dismissed.